42 So.3d 1246 (2010)
C.L.B.
v.
D.L.O.
2080935.
Court of Civil Appeals of Alabama.
February 12, 2010.[*]
*1247 Tiffin M. Taylor, Huntsville, for appellant.
Denise M. Learned and Alisha D. Franklin, Addison, for appellee.
THOMPSON, Presiding Judge.
C.L.B. ("the mother") appeals from a judgment of the Winston Juvenile Court modifying custody of the parties' child ("the child") and awarding custody to D.L.O. ("the father").
Briefly, the record reveals the following relevant facts. The mother and the father had the child out of wedlock. When the child was born, the mother was 16 years old and the father was 20 years old. On August 5, 2004, the juvenile court, incorporating an agreement of the parties, entered *1248 a judgment establishing the father's paternity and awarding custody of the child to the mother. Pursuant to the parties' agreement, the judgment granted visitation to the father and ordered him to pay child support.
After the birth of the child, the mother went on to graduate from high school and college. The mother moved to Huntsville, without any objection from the father, and she is now a teacher in the Huntsville public schools. The record indicates that the parties had an amicable relationship, and they appeared to work well together in raising the child.
In 2008, however, a dispute arose between the parties regarding the mother's change in religious beliefs. The mother enrolled the child in a private school in Huntsville affiliated with the mother's religious beliefs. The father filed a petition with the juvenile court seeking to modify custody of the child. In the petition, the father did not allege that the child was dependent.
In May 2009, a hearing was held on the father's petition. On June 3, 2009, the juvenile court entered a judgment stating that, although dependency was not asserted in the father's petition, "the issue of the minor child's dependency was raised and tried before the court, without objection." The juvenile court found that, while in the custody of the mother, the child had been subjected to a condition or surroundings that endangered the child's morals, safety, or general welfare. Accordingly, the juvenile court found that the child was "dependent," as defined in § 12-15-1(10), Ala. Code 1975 (now codified at § 12-15-101(8), Ala.Code 1975), and awarded custody to the father. In awarding the father custody, the juvenile court explicitly rejected the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984), applicable in cases in which one parent seeks to obtain a change in custody after an earlier judicial determination has granted primary custody to the other parent. Instead, the juvenile court applied the "best-interest-of-the-child" standard used in dependency cases.
On appeal, the mother asserts that the juvenile court exceeded its discretion in finding that the child was dependent. She contends that the issue of dependency was not before the court, and, she asserts, contrary to the juvenile court's statement, the issue was not raised and tried by the implied consent of the parties. See Rule 15(b), Ala. R. Civ. P. We agree.
The standard of appellate review of a child-custody judgment based on ore tenus evidence is deferential.
"`When evidence in a child-custody case has been presented ore tenus to the trial court, that court's findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determinationit hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing.'"
Burgett v. Burgett, 995 So.2d 907, 912 (Ala. Civ.App.2008) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996)).
As the mother points out, a finding of dependency must be supported by clear and convincing evidence. §§ 12-15-310(b) and -311(a), Ala.Code 1975. "`"`[C]lear and convincing evidence' is `[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.'"'" M.E. v. Shelby County Dep't of Human Res., 972 So.2d 89, 92-93 (Ala.Civ.App.2007) (quoting Ex *1249 parte T.V., 971 So.2d 1, 9 (Ala.2007), quoting in turn other authority).
A review of the record on appeal reveals that the issue of the child's dependency was never raised, and the parties did not agree to try the issue of dependency. Nonetheless, the juvenile court found that the child was dependent because he was in a condition or surroundings that endangered his morals, health, or general welfare. The record does not support the juvenile court's findings.
The father testified that, until the parties' religious differences arose, "I thought that [the mother] was one of the best mothers that I had ever met." Later, he testified that, although he did not believe that the mother had "made the right decision on the religion," he believed that she was "probably the best mom that I have ever met, as far as getting a bruise or cut on you, probably the best."
The juvenile court found that the child was "fearful" of the mother's husband. That finding is also not supported by the evidence. There was testimony indicating that the child was reluctant to talk about the mother's husband in front of the father, but there was no evidence indicating that the child was afraid of the mother's husband. The father testified that he did not believe that the mother would allow the child to be physically harmed. He also said that the mother's new husband, who shares the mother's religious beliefs, is "super nice" and that he did not believe that the mother's husband was harming the child.
The juvenile court found that the mother's move to Huntsville had had a negative impact on the child and that it had separated the child from his extended family. The record shows that the father did not object to the mother's move to Huntsville. In fact, he stated that he understood that the mother had better job opportunities in Huntsville than in Winston County and that he was also interviewing for jobs outside of Winston County. The evidence was undisputed that the mother had invited her parents to visit in Huntsville, but, because of her religious beliefs, they had refused to visit her. The evidence also was undisputed that the child visited with both his paternal and his maternal grandparents every other weekend when he was at his father's house for visitation.
In its findings, the juvenile court stated that the mother had lived with her new husband for approximately ten months before they married. The evidence supported that finding. However, the juvenile court did not mention the undisputed evidence that, at the time of the hearing, the father was living with his girlfriend and her child.
The evidence indicated that the child was doing well in school and that he was healthy, happy, and well-adjusted. There was no contention that the child was anything but well-cared for while in the mother's custody. The father acknowledged that his only complaints against the mother were her religious beliefs and the fact that she had enrolled the child in the school affiliated with those beliefs. The father said that he wanted the child raised with the same religious beliefs with which he had been raised. The father said that he did not attend church more than a few times a year.
Based upon the record before us, we conclude that the juvenile court's finding that the child was dependent is not supported by clear and convincing evidence and is plainly and palpably wrong. Therefore, in determining that a change in custody was warranted in this case, the juvenile court erred in applying the "best-interest" standard, which is applicable in dependency cases. Because this case is a *1250 custody dispute between two parents and not a dependency action, the juvenile court should have applied the McLendon standard, pursuant to which the father must show that the proposed custody change will materially promote the child's best interests and that the benefits of the proposed change will offset the inherently disruptive effect caused by the change of custody.
Because the juvenile court applied the incorrect standard in determining whether to modify custody, we reverse the judgment and remand this cause for that court to apply the standard set forth in McLendon, supra, to determine whether a change of custody is warranted.
REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
BRYAN and MOORE, JJ., concur in the result, without writing.
NOTES
[*] Note from the reporter of decisions: This opinion was released by the Court of Civil Appeals under the date February 12, 2010. This case was actually released to the public on February 16, 2010.